FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRUSTEES OF THE IRONWORKER LOCAL UNION NO. 16, PENSION PLAN *et al*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. 1:18-cv-03219-ELH |
| OLE MEN & SONS, LLC | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT AND RECOMMENDATIONS

This Report and Recommendations addresses Plaintiffs' Motion for Default Judgment. (ECF No. 15). Plaintiffs include the following entities:

a. Trustees of the Ironworkers Local Union Number 16 Pension Plan,
b. Trustees of the Ironworkers Local Union No. 16 Health Fund,
c. Trustees of the Ironworkers Local No. 5 Apprentice Fund,
d. Trustees of the Iron Workers Local No. 16 Vacation Fund
   (collectively the "Ironworkers Funds"),
e. Trustees of the Mid-Atlantic States District Council Participating Locals Annuity Fund ("Annuity Fund"),
f. Ironworkers Industry Advancement Fund,
g. Ironworker-Management Progressive Action Cooperative Fund
   (collectively the "Industry Funds"),
h. Local Union No. 5 of the International Association of Bridge, Structural and Ornamental Iron Workers (hereinafter "Union" or "Local 5") is an unincorporated labor organization, as that term is defined in the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 152(5). Local 5 is the successor to Local 16, having been merged into Local 5, effective January 3, 2017.

The Ironworker Funds and Annuity Fund are employee benefit plans organized under the provisions of the Employee Retirement Income Security Act ("ERISA"). (ECF No. 1 at ¶¶ 1–2).

1

The Industry Funds are trust funds provided for under the terms of a collective bargaining agreement ("CBA"). *Id.* ¶ 4. All are governed by their respective Agreements and Declarations of Trust. *Id.* ¶¶ 1–2; ECF 15-4 ¶¶ 5–6. All are financed by payments made by employers pursuant to the terms of a collective bargaining agreement between the employer and Local 5. (ECF No. 1 ¶¶ 4, 10–12; ECF No. 15-4 ¶ 7).

Defendant Ole Men & Sons, LLC ("Ole Men") is an iron contractor or subcontractor in the construction and related industries. (ECF No. 1 ¶ 6). Ole Men was bound to a collective bargaining agreement with Local 5 providing for, inter alia, payments by Ole Men to the above funds. (ECF No. 1 ¶ 10; ECF No. 15-3 ¶¶ 4–5; ECF No. 15-4 ¶ 7; ECF No. 15-2 ¶¶ 5–6).

On August 27, 2019, in accordance with 28 U.S.C. § 636, and Local Rules 301 and 302, Judge Hollander referred this case to me to review Plaintiffs' motion and to make recommendations concerning damages. (ECF No. 16). I have reviewed Plaintiffs' motion and accompanying attachments. I find that a hearing is unnecessary. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that Plaintiffs' Motion for Default Judgment be GRANTED, and that damages be awarded as set forth herein.

I. **BACKGROUND**

Defendant, Ole Men, entered into a collective bargaining agreement ("CBA") with Local 5's predecessor, Local 16, on or about June 14, 2016. (ECF No. 1 ¶ 10). The CBA established terms and conditions of employment for journeymen and apprentice ironworkers employed by Defendant. *Id.* Pursuant to the CBA, Ole Men agreed to make certain payments to the Ironworkers, Annuity and Industry Funds (collectively, the "Funds") on behalf of its employees performing worked covered by the CBA. *Id.* ¶¶ 12–13. The CBA also required Ole Men to deduct

dues and other assessments (collectively "contributions") for Local 5 from the wages of employees who authorized those deductions. *Id.* ¶ 13.

Under the CBA and the Agreements and Declarations of Trust, Ole Men was obligated to make full and timely payment of these contributions monthly to the Funds, along with monthly remittance reports identifying hours worked by the employees covered by the CBA and the amount of contributions payable for each employee. (ECF No. 1 ¶ 14). These contributions were due by the 15th day of the month following the month in which the employees worked. *Id.* An employer is deemed in default if contributions are not received in the applicable time period. *Id.* This cause of action is premised on the contention that Ole Men failed to pay contributions due for work performed in the months of January 2017, May 2017 and through July 2017, and May 2018 through August 2018. *Id.* ¶ 15–16. On this basis, Plaintiffs claim the unpaid contributions, liquidated damages, interest, and attorney's fees.

In support of their motion, Plaintiffs attached the Declarations of :April Brown, an account executive at Lawrence Musgrove (a third party administrator for the Annuity Fund) (ECF No. 15-2); Ray Cleland, President and Business Agent for the Union; (ECF No. 15-3); Kathy Cole, an account executive at Zenith American Solutions (a third party administrator for the Iron Worker Funds) (ECF No. 15-4); and Rebecca Richardson (Plaintiffs' counsel) (ECF No. 15-5).

On January 29, 2019, the Clerk of this Court entered an entry of Default as to Ole Men. On that date, the Court provided Ole Men with a notice of its default and an opportunity to cure, which it failed to do. On March 15, 2019, Plaintiff Filed a Motion for Default Judgment. (ECF No. 15). Ole Men did not file an opposition, and the deadline to do so now has passed. *See* Local Rule 105.2a (D. Md. 2018).

3

## II. STANDARD FOR DEFAULT JUDGMENT

In reviewing Plaintiffs' Motion for Judgment by Default, the court accepts as true the well-pleaded allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2011). It remains, however, "for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action." *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010). If the Court finds liability is established, it will proceed to determine the appropriate amount of damages. *Id.* In sum, the Court must: (1) determine whether the unchallenged facts in Plaintiffs' Complaint constitute a legitimate cause of action, and if they do, (2) make an independent determination regarding the appropriate amount of damages. *Id.*

## III. DISCUSSION

### A. Liability

Plaintiffs allege that Ole Men's failure to make the required contributions constitutes a breach of its contractual obligation under the CBA, and this correspondingly establishes a breach of ERISA § 515. *See* 29 USC § 1145. This Court Agrees. Section 515 provides

> Every Employer who is obligated to make contributions to a multiemployer plan. . . under the terms of a collectively bargained agreement shall. . . make such contributions in accordance with . . . such agreement.

*Int'l Painters & Allied Trade Indus. Pension Fund v. Sign Maintenance Lighting Inc.*, 2016 WL 447319, at *3 (D. Md. Feb. 5, 2016) (citing 29 U.S.C. § 1145).

As the Court of Appeals for the Fourth Circuit explained, "Section 515 puts multiemployer plans in a stronger position than they otherwise occupy under common law contract principles." *Bakery & Confectionery Union v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997). Specifically, an employer is prohibited from asserting certain defenses against a multiemployer fund that the

employer might be able to assert against the union itself.[1] ERISA permits the recovery of damages in an action to enforce the payment of unpaid contributions. 29 USC § 1132(g)(2).

The Labor-Management Relations Act ("LMRA") provides for federal jurisdiction over suits for a violation of contract between an "employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Employee benefit fund trustees have standing to sue under Section 185(a) as third-party beneficiaries of a collective bargaining agreement. *Sign Maintenance*, 2016 WL 447319, at *3. As described above, Plaintiffs' Complaint alleges that Ole Men was party to a CBA that required contributions be made to the Funds, and it failed to comply with these terms, which resulted in a breach of their duties under the CBA and ERISA. (ECF No. 1 at p. 6). Plaintiffs' Complaint further asserts their standing as third-party beneficiaries of the CBA.[2] Accordingly, these allegations establish Ole Men's liability to Plaintiffs under both ERISA and LMRA.[3] On that basis, I recommend that Plaintiffs' Motion for Judgment by Default be granted.

B. Damages

Under Section 502(g)(2) of ERISA, an "employer who fails to make contributions as required by Section 515 is liable to the multiemployer fund for the unpaid contributions, interest on the unpaid contributions, liquidated damages of up to twenty (20) percent of the amount of the

---

[1] *See, e.g.*, *Sign Maintenance*, 2016 WL 447319, at * 3 (citing cases wherein certain defenses were prohibited, specifically, the defense of fraud in the execution cannot be applied to pension funds, and an oral argument to modify the text of a collective bargaining agreement cannot be enforced against pension plans).

[2] Plaintiff did not expressly assert jurisdiction based on its third-party beneficiary status, however, this is seemingly what Plaintiff intended when citing the relevant statute. *See* ECF No. 1 ¶ 7 ("This Court has jurisdiction over this action under Sections 502 and 515 of ERISA . . . and under Section 301 of the LMRA, 29 U.S.C. § 185).

[3] *Hudson Cnty. Carpenters Local Union v. V.S.R. Const. Corp*, 127 F. Supp. 2d 565, 568 (D. N.J. 2000) ("It is well-established that the failure to make contributions to a union trust fund as required by a collective bargaining agreement constitutes a violation of ERISA § [1145] and a violation of LMRA § [185].").

unpaid contributions, and reasonable attorneys' fees and costs." *Sign Maintenance*, 2016 WL 447319, at *3 (citing 29 U.S.C. § 1132(g)(2)). The damages asserted by Plaintiff are evaluated in-turn.

(1) Unpaid Contributions

The Declaration of Kathy Cole, an account executive at Zenith American Solutions, which is the third-party administrator for the Ironworkers Funds establishes that Ole Men currently[4] owes $132, 637.91 to all Plaintiffs.[5] (ECF No. 15-4 ¶¶ 14–19). In addition, the "Summary of Amounts Owed for Default judgment" memorializes this amount owed. (ECF No. 15-6). As a result, I recommend a total award of unpaid contributions in the amount of $132, 637.91 as requested in the Motion for Judgment by Default.

(2) Interest

Pursuant to the CBA and Agreements and Declarations of Trust establishing the Funds, an employer who fails to pay the amounts required by the date due owes interest on the unpaid contributions at a rate of twelve percent per annum from the date due through the date of payment. (ECF No. 15-1 at p.8). According to the Declaration of Ms. Cole, Ole Men owes interest at the rate of twelve percent for the unpaid contributions owed during May 2017 through July 2017 and May 2018 through August 2018. (ECF No. 15-4 ¶ 13).[6] As of February 15, 2019, the amount of

---

[4] This amount is higher than the initial amount sought in the complaint because the precise amounts due for January 2017 and May 2018 through August 2018 were "unknown at this time," but were at least $122,424.51. (ECF No. 1 ¶ 17). Since that time, Plaintiffs have been further able to establish an additional shortfall of $10,213.40 in payments due to the Annuity Fund. (ECF 15-1 at p. 6, n. 2; ECF No. 15-2 ¶ 12).

[5] Ole Men owes Iron Workers Funds, Industry Funds, Annuity Fund and Union unpaid contributions of $59,971.72 for May 2017 through July 2017; $62, 470.04 for the months of May through August 2018; and additional $10, 213.40 to the annuity fund for May 18 to August 18. (ECF No. 15-1 at p.7).

[6] The Iron Workers Funds' Trust Agreements, and the CBA, provide that liquidated damages were to be assessed at the rate of ten percent of the contributions due. (ECF No. 15-4 ¶ 12). Therefore, Annuity fund contributions owed prior to January 1, 2018 are assessed at the rate of ten percent, pursuant to the terms of Local 16's (the predecessor) Annuity Fund's Trust Agreement. *Id.*

interest owed on the contributions for these months was $16,176.38. (*Id*. ¶ 19; ECF No. 15-2 ¶ 12). In addition, Ole Men owes $1,442.84 in interest for late contributions made for work during March 2017, August 2017, and November 2017 through April 2018. (ECF No. 15-2 ¶ 13).

The interest appears to have been appropriately calculated, and I recommend that it be awarded in the total amount of $17,619.22 as requested.

### (3) Liquidated Damages

In an action of this nature, to enforce Section 1145, the Court shall also award the plan an amount equal to the greater of:

> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A)

29 U.S.C. § 1132(g)(2)(C).

Here, a variety of agreements are at issue, and the amount of liquidated damages available varies under the plans. As set forth more fully below, Plaintiffs have sufficiently proven total liquidated damages in the amount of $25,945.58.

Ms. Cole's Declaration establishes that as to the Ironworkers Funds, Iron Workers Funds, Industry Funds, and Union, Ole Men owes liquidated damages of $5,997.17 for May 2017 through July 2017. (ECF No. 15-4 ¶ 16). Further, it owes $ 6,247.00 for the months May through August 2018; and $10,582.40 for late contributions paid for March 2017, April 2017 and November 2017. *Id.* ¶ 16–18.

Ms. Brown's Declaration establishes that as to the Annuity Fund, liquidated damages shall be assessed at the rate of twenty percent of the contributions due. (ECF No. 15-2 ¶ 9). On this basis, Ole Men owed liquidated damages of $2,042.68 on the unpaid contributions for May 2018 through August 2018. *Id.* ¶ 12. In addition, Ole Men failed to pay contributions owed to the

7

Annuity Fund for work performed from December 2017 through April 2018, which resulted in liquidated damages totaling $1,076.32. *Id*. ¶ 13.

Because it appears the liquidated damages were calculated appropriately, I recommend Default judgment for liquidated damages in the amount of $25,945.58 as requested in the Motion for Default. (ECF No. 15-1 at p. 8).

(4) Attorneys' Fees and Costs

Plaintiffs claim a total of $555.00 in costs for this case consisting of a filing fee of $400 and a service of process fee of $155.00. (ECF No. 15-5 ¶¶ 9–10). Based on Ms. Richardson's Declaration, those are reasonable charges for out-of-pocket expenses incurred by attorneys in the representation of their clients. *Id.* ¶ 7. In calculating the appropriate award of attorney's fees, the Court must first determine the lodestar amount, which is defined as "a reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). A trial court may exercise its discretion in determining the lodestar amount because it possesses "superior understanding of the litigation," and the matter is "essentially" factual. *Thompson v. HUD*, 2002 WL 31777631, at *6 n. 18 (D. Md. Nov. 21, 2002). After calculating the lodestar amount the Court calculates a reasonable fee by evaluating whether the hours worked were reasonable (*i.e*., the request does not include hours that are unnecessary or duplicative).

In this Circuit, in evaluating both the lodestar amount and the overall reasonableness of the fee, courts utilize twelve factors. These considerations include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience,

reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Thompson*, 2002 WL 31777631, at *6. n.19 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

According to Ms. Richardson's Declaration, Plaintiffs' attorneys in this case billed at a rate of $231.00 per hour for attorney time. (ECF No. 15-5 ¶ 5). The rates charged for Ms. Richardson (admitted to the bar for approximately nine years), Francis J. Martorana (admitted to the bar for approximately thirty-seven years), and Diana Cohn (admitted to the bar for approximately six years) comport with the "Guidelines for Hourly Rates" as set forth in Appendix B of the Local Rules of this Court.[7]

After calculating the appropriate rate, the Court must determine whether the hours worked were reasonable. The Plaintiffs submitted an itemization that shows that the attorneys billed a total of 15.5 hours on this case, including initial review and communications, preparation of pleadings, and motions practice and no unreasonable duplication. (ECF No. 15-5 at ¶ 6). I have also reviewed the docket entries in this matter and compared them to the hours asserted. Accordingly, I find that the total number of hours worked were reasonable. Given the relatively few hours worked and lack of opposition, I find that a detailed analysis of the *Johnson* factors is unnecessary in this case. Suffice it to say that these factors do not motivate me to increase or decrease the amount sought.

---

[7] In considering the overall reasonableness of the fee, the Local Guidelines are not definitive; but do "provide practical guidance to lawyers and judges when requesting, challenging, and awarding fees." Local Rule App'x B n.6 (D. Md. 2016). Because the rates requested are well within the Local Guidelines and are unchallenged, they provide an additional indicia of reasonableness in this case. *See Trustees of the Nat'l Asbestos Workers Med. Fund v. Wrap It Up Constr., LLC*, 2018 WL 5291883, at *5 (D. Md. Oct. 25, 2018), *rep. & recommendation adopted*, 2018 WL 6704799 (D. Md. Nov. 19, 2018).

In light of the above, I recommend awarding fees in the amount of $3,580.50 and costs in the amount of $555.00.[8]

## IV. CONCLUSION

For the reasons set forth above, I recommend that:

1. The Court **GRANT** Plaintiffs' Motion for Judgment by Default (ECF No. 15); and

2. The Court Award Plaintiffs, against Defendant a total judgment of $180,338.21 in accordance with the recommendations above.

I also direct the Clerk to mail a copy of this Report and Recommendations to Defendant at the address listed on Plaintiffs' Complaint (ECF No. 1). Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

September 20, 2019                          /s/

                                                                                              J. Mark Coulson
                                                                                              United States Magistrate Judge

---

[8] Plaintiffs incorrectly total these amounts at $3,735.50 (ECF No. 15-1 at p. 10), however the correct sum is $4,135.50.

NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report. Such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.